IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG -4  AM 9: 02

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| ISSAC B. TIGRETT, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2659 MI/V |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

---

## OPINION AND ORDER FOLLOWING NON-JURY TRIAL

---

The Court held a non-jury trial in this case on November 22, 2004. Plaintiff Isaac Tigrett was represented by Cannon Allen, Esq. and Lloyd DeVos, Esq. Defendant United States of America was represented by R. Scott Clarke and Ivan C. Dale, Esq., Trial Attorneys for the Tax Division of the Department of Justice. In this action, Plaintiff seeks a refund for his 1997 taxes arising from a loss in 1997 and carrying back from 1997 to 1994, 1995, and 1996.

## I. FINDINGS OF FACT

The relevant facts in this case are largely undisputed and are contained in the November 22, 2004, Joint Pre-trial Order (Docket No. 45). Plaintiff was the only witness to testify at trial. His testimony was consistent with the allegations made in his Complaint, his summary judgment papers, and the Joint Pre-trial Order. Plaintiff was a credible witness.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _8-4-05_



Plaintiff timely filed tax returns for the years 1994, 1995, 1996, and 1997.  On November 17, 2000, Plaintiff timely filed amended tax returns for 1994, 1995, 1996, and 1997, claiming a refund of Federal income taxes in the amount of $34,846 for 1994, $143,043 for 1995, $121,075 for 1996, $122,764 for 1997 and $105,990 for 1998.  The amended returns claimed a loss for the year 1997 and a carry-back to reduce Plaintiff's tax liability for 1994, 1995, and 1996.  While the Internal Revenue Service issued a refund for the year 1998 based on a carry-forward of the 1997 loss, the Internal Revenue Service took no action regarding Plaintiff's 1994, 1995, 1996, and 1997 tax refund claims for more than a year after the refund claims were filed.  Because the Internal Revenue Service declined to enter an agreement tolling the limitations period provided by the Internal Revenue Code, Plaintiff filed this suit to preserve his rights.  Plaintiff exhausted all administrative remedies available to him prior to filing this suit.

Plaintiff is in the business of originating and developing concept restaurants and entertainment venues. (Trial Tr. at 17-26.)  Between 1990 and 1992, Plaintiff conceived of, developed, promoted and financed the House of Blues, a restaurant and entertainment venue.  In 1992, Plaintiff became the chief executive officer of HOB Entertainment, Inc.("HOB"), the corporation formed to develop the House of Blues concept.  He

served in that capacity until the termination of his employment
in 1997.

In early 1996, HOB was afforded the opportunity to open a
temporary House of Blues venue in Centennial Park in Atlanta,
Georgia, during the 1996 Olympic games.  At that time, Plaintiff
owned approximately 11.9% of the outstanding shares of HOB and
his investment of $2,000,000 was less than 10% of its capital.
Plaintiff held the title of Chairman and served on the Board of
Directors of HOB, but did not own a controlling interest in HOB.
Plaintiff's employment as Chairman and Chief Executive Officer of
HOB was pursuant to an employment contract.  That contract
provided that HOB's failure to generate profits for any fiscal
year ending on or after December 31, 1996, would trigger a
provision allowing HOB to terminate Plaintiff's employment.
Plaintiff understood his employment with HOB to be dependent on
his generating profits for the company and value for the
shareholders.

Because some of the members of the Board of Directors of HOB
were concerned that the proposed Atlanta venue might not be
successful, Plaintiff, along with board members Dan Ackroyd and
Kit Goldsbury, agreed that in the event HOB lost money in
connection with the Olympic venture they would contribute funds
to cover the shortfall.  No part of that agreement was intended
to be structured as a loan to HOB.  Plaintiff received no

3

additional shares, stock options, or any other type of security in exchange for this indemnification.  Thereafter, HOB resolved to advance up to $7,000,000 in connection with the House of Blues Atlanta venture and established a subsidiary company, House of Blues Atlanta, Inc.("HOB Atlanta"), to operate the temporary venue in Atlanta.  HOB provided all of the capital used by HOB Atlanta in operating the temporary venue.  HOB anticipated that the funds used for the temporary venue in Atlanta would be repaid from either the profits resulting from the venue or via the indemnification agreement.

The temporary venue was set up to operate during the Atlanta Olympic Games, but was closed for four and one-half days following the explosion of a bomb in Centennial Park. Ultimately, the accountants for HOB determined that HOB lost more than $10,000,000 from the operation of the temporary Atlanta venue.  On October 23, 1996, the HOB Board of Directors requested that Plaintiff honor his agreement to indemnify HOB for such losses.  In order to raise $5,000,000 to honor his indemnity agreement, Plaintiff pledged his free shareholdings and options in HOB to Parkway Hotel Corporation in exchange for a loan in that amount.  The share certificates and option agreements were placed in trust at First Union Bank.  The documents for the loan were drawn up and dated December 31, 1996.  The loan closed in January of 1997 at which time Plaintiff paid HOB $5,000,000.

Plaintiff was terminated as Chief Executive Officer of HOB by October of 1997 and he continues to own the HOB shares and options that were pledged to Parkway Hotel Corporation.[1] Plaintiff has transferred HOB shares in consideration for Parkway's forbearance from enforcing its rights under the loan agreement, but Plaintiff has never made any payments of principal or interest on the loan itself. In connection with the loan from Parkway Hotel Corp. and the deposit of funds into the First Union escrow account, Plaintiff paid $22,601 in legal fees and earned interest of $1,709.

## II. CONCLUSIONS OF LAW AND ANALYSIS

Plaintiff claims that he is entitled to a tax deduction because the $5,000,000 at issue represents a business bad debt under § 166 of the Internal Revenue Code, 26 U.S.C § 166. In the alternative, Plaintiff asserts that even if he is not entitled to a deduction under § 166, he is nonetheless entitled to a deduction under § 162 as an ordinary and necessary business expense or under § 165 as a loss incurred in operating a trade or business. Plaintiff also contends that he is entitled to deduct certain legal and interest expenses and that he is entitled to an award of attorney's fees in conjunction with this action.

---

[1] The accountants who prepared Plaintiff's original Federal income tax returns for 1997 mistakenly reflected that these interests had been sold. This mistake was later discovered and the amended returns at issue were filed.

Defendant contends that Plaintiff is not entitled to a refund under §§ 166, 162 or 165, and that his request for attorney's fees is premature.  With respect to each of Plaintiff's claims, the Court will first set forth its conclusions of law and then its analysis.

As a preliminary matter, Plaintiff bears the burden of proving by a preponderance of the evidence that he is entitled to the tax deductions that are the basis of his claims. <u>United Dairy Farmers, Inc. v. United States</u>, 267 F.3d 510, 515-16 (6th Cir. 2001)(citing <u>United States v. Janis</u>, 428 U.S. 433, 440-41 (1976)); <u>see also INDOPCO, Inc. v. Comm'r of Internal Revenue</u>, 503 U.S. 79, 84 (1992)("[A]n income tax deduction is a matter of legislative grace and ... the burden of clearly showing the right to the claimed deduction is on the taxpayer.").

### A. 26 U.S.C. § 166

Under § 166(a)(1), debts that become worthless during a taxable year may be deducted in that year. 26 U.S.C. § 166(a)(1). To establish a claim for a deduction under § 166, a plaintiff must show: (1) a valid debtor-creditor relationship or a bona fide debt; (2) a debt created or acquired in connection with a trade or business; (3) the amount of the debt; (4) the worthlessness of the debt; and (5) the year in which the debt became worthless. <u>Davis v. Comm'r of Internal Revenue</u>, 866 F.2d 852, 859 (6th Cir. 1989).

6

Because a capital contribution is not considered debt for
the purposes of § 166, a taxpayer must prove that an advance to a
corporation constitutes a true loan and not a contribution to
capital.  Roth Steel Tube Co. v. Comm'r of Internal Revenue, 800
F.2d 625, 629 (6th Cir. 1986);  Smith v. Comm'r of Internal
Revenue, 370 F.2d 178, 180 (6th Cir. 1966).  However, "[a]dvances
between a parent corporation and a subsidiary . . . are subject
to particular scrutiny 'because the control element suggests the
opportunity to contrive a fictional debt.'"  Roth Steel Tube Co.,
800 F.2d at 630 (quoting United States v. Uneco, Inc., 532 F.2d
1204, 1207 (8th Cir. 1976) (internal citations omitted)).

Whether an advance to a corporation constitutes a capital
contribution or a loan is a question of fact and turns on
"whether the objective facts establish an intention to create an
unconditional obligation to repay the advances."  Roth Steel Tube
Co., 800 F.2d at 629-30.  In Roth Steel Tube Co., the United
States Court of Appeals for the Sixth Circuit identified eleven
factors to consider in determining whether an advance is a
capital contribution or a loan:

> (1) the names given to the instruments, if any,
> evidencing the indebtedness; (2) the presence or
> absence of a fixed maturity date and schedule of
> payments; (3) the presence or absence of a fixed rate
> of interest and interest payments; (4) the source of
> repayments; (5) the adequacy or inadequacy of
> capitalization; (6) the identity of interest between
> the creditor and the stockholder; (7) the security, if
> any, for the advances; (8) the corporation's ability to
> obtain financing from outside lending institutions; (9)

7

the extent to which the advances were subordinated to
the claims of outside creditors; (10) the extent to
which the advances were used to acquire capital assets;
and (11) the presence or absence of a sinking fund to
provide repayments.

Roth Steel Tube Co., 800 F.2d at 630.  In considering these
factors, "no one factor is controlling or decisive, and the court
must look to the particular circumstances of each case."  Id.

To qualify for a business bad debt deduction, the taxpayer
must also establish that the debt was proximately related to the
conduct of the taxpayer's trade or business. United States v.
Generes, 405 U.S. 93, 103 (1972).  "[I]n determining whether a
bad debt has a 'proximate' relation to the taxpayer's trade or
business...the proper measure is that of dominant motivation"
underlying the transaction.  Id.  Where a taxpayer is both an
employee and shareholder, the taxpayer's "dominant motivation"
may be either business-related or investment-related.  Litwin v.
United States, 983 F.2d 997, 999-1000 (10th Cir. 1993).  A
taxpayer may take a deduction for a bad debt only if his dominant
motivation is business related.  Id. at 1000.  The Litwin Court
noted "three objective factors" upon which courts focus "in
determining a taxpayer's dominant motivation: (1) the size of
taxpayer's investment, (2) the size of taxpayer's after-tax
salary, and (3) other sources of gross income available to the
taxpayer."  Id.

Plaintiff contends that he is entitled to a deduction under § 166.  Defendant contends that Plaintiff is not entitled to such a deduction because he cannot prove the existence of a bona fide debt.  In particular, Defendant contends that the underlying transaction represents a capital contribution rather than a loan. Defendant further contends that the debt does not bear a proximate relationship to Plaintiff's trade or business because his dominant motivation in incurring the debt was investment related and not in furtherance of his interest as an employee of HOB.

### i. **Bona Fide Debt**

In order to obtain a deduction under § 166, a taxpayer must demonstrate that the underlying transaction gave rise to a bona fide debt.  <u>Davis</u>, 866 F.2d at 859.  Plaintiff contends that a bona fide debt arose from the underlying transaction because the advance from HOB to HOB Atlanta was a loan indemnified by Plaintiff.  Specifically, Plaintiff contends that certain <u>Roth Steel Tube Co.</u> factors such as the source of repayment, the fixed maturity date of the obligation, the security for the obligation, and the ability to obtain outside financing, support treating the advance as a loan.  Defendant contends that there is no bona fide debt because all of the <u>Roth Steel Tube Co.</u> factors support treating the advance from HOB to HOB Atlanta as a capital contribution rather than a loan.  In light of the entire record,

and considering all of the <u>Roth Steel Tube Co.</u> factors in the context of the particular circumstances of this case, the Court finds that Plaintiff has failed to meet his burden to prove that the advance should be treated as a loan.

Most of the <u>Roth Steel Tube Co.</u> factors weigh in favor of finding that the advance from HOB to HOB Atlanta was a capital contribution rather than a loan. Specifically, there is no evidence in the record of any promissory note regarding the advance. (Trial Tr. at 58.) Accordingly, there is no instrument evidencing an indebtedness. Further, the evidence reflects that there was no fixed maturity date or schedule of payments, that no interest was charged on the advance, and that no interest payments were made.[2]

The only security interest attached to the advance was Plaintiff and the other investors' agreement to indemnify HOB for any losses. Even that agreement, however, did not necessarily provide for a full repayment of the advance. Rather, the undisputed evidence shows that the source of the repayment was

---

[2] Although Plaintiff contends that the advance was to be repaid 45 days after the end of the Olympics, the only evidence to support that contention is Plaintiff's own testimony and the minutes of the May 29, 1996, HOB Board of Directors meeting. The board minutes, however, merely state that "there would be a final accounting [of] the [results] of the House of Blues Atlanta venture within 45 days after the conclusion of the Olympics." (Trial Ex. 16.) Even if the Board Meeting minutes did establish a fixed maturity date, however, the Court finds that factor outweighed by the other factors weighing in favor of finding the advance to be a capital contribution.

10

intended to be the profits from the venture, and indemnification only attached to losses from the venture. Absent such losses, there would have been no obligation for Plaintiff and the other investors to repay the advance. Additionally, since any repayment to HOB from HOB Atlanta was designated to come from the profits of the venture or through the indemnification agreement, HOB would be subordinated to claims of creditors of HOB Atlanta.

Moreover, the advance itself was the only source of capitalization for HOB Atlanta. Therefore, HOB Atlanta was significantly undercapitalized, making it unlikely that HOB Atlanta would be able to obtain financing from outside lending institutions.[3] Additionally, the identities of the creditor and stockholder were identical, since HOB Atlanta was set up as a subsidiary of HOB, HOB owned 100% of the shares of HOB Atlanta and HOB provided 100% of the financing. That financing, in turn, funded all operations and capital expenditures of HOB Atlanta. There was also no evidence that any "sinking fund" existed to provide repayments.

Having considered the entire record in light of the Roth Steel Tube Co. factors, the Court finds that Plaintiff has failed to meet his burden to prove that the advance from HOB to HOB

---

[3] Although there is evidence in the record to show that HOB Atlanta may have been able to obtain outside financing in the amount of $7,000,000 (Trial Tr. at 30, 62), the Court finds that factor outweighed by the other factors which weigh in favor of finding the advance to be a capital contribution.

Atlanta was a loan rather than a capital contribution. Accordingly, Plaintiff's claim that he was entitled to a deduction under § 166 must fail.[4]

### B. 26 U.S.C. § 162

In order to claim a deduction under § 162, "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Comm'r of Internal Revenue v. Lincoln Savings & Loan Ass'n, 403 U.S. 345, 352 (1971). The parties dispute whether Plaintiff's $5,000,000 payment to HOB to indemnify it for losses attributable to the HOB Atlanta venture was an "ordinary" expense.

"The principal function of the term 'ordinary' in [§] 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the

---

[4] Although Plaintiff has failed to meet his burden to prove that the advance to HOB Atlanta was a loan rather than a capital contribution, the Court finds that, having reviewed the record and considered all of the relevant Litwin factors, Plaintiff has proven by a preponderance of the evidence that his dominant motivation in indemnifying the advance from HOB to HOB Atlanta was business related and, therefore, that the debt was proximately related to the conduct of his trade or business. In particular, the record indicates that Plaintiff may have been motivated to indemnify the HOB Atlanta venture, at least in part, in order to convince the HOB Board of Directors of his ability to promote the growth of the company and thereby secure his position as Chairman and Chief Executive Officer. Unfortunately, because the venture failed, Plaintiff did not succeed in so convincing the Board and his employment as Chairman and Chief Executive Officer was terminated.

nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset." Comm'r of Internal Revenue v. Tellier, 383 U.S. 687, 689-90 (1966)(citation omitted). Although an expense may be "ordinary" even if it happens only "once in the taxpayer's lifetime," "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved." Deputy v. Du Pont, 308 U.S. 488, 495 (1940)(citations omitted).

Section 162 was "primarily intended to cover recurring expenditures where the benefit derived from the payment is realized and exhausted within the taxable year." Stevens v. Comm'r of Internal Revenue, 388 F.2d 298, 300 (6th Cir. 1968). Further, "a taxpayer's realization of benefits beyond the year in which the expenditure is incurred is undeniably important in determining whether the appropriate tax treatment is immediate deduction or capitalization." INDOPCO, Inc., 503 U.S. at 87-88.

Defendant contends that Plaintiff is not entitled to a deduction under § 162 because Plaintiff's indemnification promise was an extraordinary expense, and because any benefits to be realized by Plaintiff due to HOB's investment in HOB Atlanta were to be realized over the long-term. Plaintiff contends that the expense was not extraordinary because the funding and/or guaranteeing of debt is related to his trade or business of developing and promoting restaurants, and that Plaintiff's

guarantee of the debt was further intended to promote the HOB brand, assist in developing interest for a forthcoming initial public offering of shares, and gain enhanced compensation as Chairman and Chief Executive Officer.

Having reviewed the record and considering the relevant factors, the Court finds that Plaintiff has failed to meet his burden to prove that his indemnification payment was an "ordinary" expense within the meaning of § 162.  Although Plaintiff contends that he has entered into similar indemnification agreements in the past (Trial Tr. at 39-41), there is no evidence in the record to show that it is a common or frequent occurrence in the restaurant and entertainment business for an officer of a corporation to make a personal guarantee in an amount several times his annual salary to encourage the corporation to undertake a new venture.  Additionally, the Court finds that, based upon the evidence in the record, the primary intended benefits of Plaintiff's indemnification of the venture were to build the HOB brand and develop interest in a forthcoming initial public offering of shares. (Trial Tr. at 29, 64.)  Those benefits would likely be realized outside of the taxable year - and therefore are more appropriately treated as capital expenditures.  Accordingly, Plaintiff's claim that he is entitled to a deduction under § 162 must also fail.

14

**C. 26 U.S.C. § 165(c)(1)**

Plaintiff next contends that he is entitled to a deduction under 26 U.S.C. § 165(c)(1) because his payment of the guarantee was a loss incurred in his trade or business of developing and promoting restaurants and entertainment venues. Section 165 provides, in pertinent part:

> (a) General rule. There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
> . . .
> (c) Limitation on losses of individuals. In the case of an individual, the deduction under subsection (a) shall be limited to
> (1) losses incurred in a trade or business....

26 U.S.C. § 165.  In order to qualify for a deduction under § 165, then, Plaintiff must have incurred a loss, and that loss must have been incurred in his trade or business.  Scant authority exists, however, interpreting § 165(c)(1) and developing the legal principles that determine whether a given transaction qualifies for a deduction under § 165.  Rather, the inquiry into what qualifies for a deduction under § 165(c)(1) appears to be fact specific.  Accordingly, the Court will determine whether Plaintiff incurred a loss within his trade or business based upon the specific facts of this case.

As a preliminary matter, the Court finds that Plaintiff was engaged in the trade or business of developing and promoting restaurants and entertainment venues.  "[I]t is not a necessary prerequisite that one devote himself completely to an enterprise

15

to qualify it as a trade or business." <u>Mercer v. Comm'r of
Internal Revenue</u>, 376 F.2d 708, 710 (9th Cir. 1967)(citing <u>Marsch
v. Comm'r of Internal Revenue</u>, 110 F.2d 423, 424 (7th Cir.
1940)).  The existence of a profit motive is the most important
criterion for determining whether a course of activity
constitutes a trade or business. <u>Lamont v. Comm'r of Internal
Revenue</u>, 339 F.2d 377, 380 (2nd Cir. 1964); <u>see also</u>  <u>Hirsch v.
Comm'r of Internal Revenue</u>, 315 F.2d 731, 737-38 (9th Cir.
1963)(finding ownership of race track could not be considered
trade or business because the basic and dominant intention of the
taxpayer was not a desire for profit).

In the parties' November 22, 2004, Joint Pretrial Order, the
parties stipulated to the fact that "Plaintiff is a developer and
promoter of restaurant and entertainment businesses." (November
22, 2004, Joint Pre-Trial Order at 4.)  Additionally, substantial
evidence exists in the record to show that Plaintiff has
developed and promoted several concept restaurants and
entertainment venues, including the Hard Rock Café, the House of
Blues, as well as new ventures such as Bozo's Hot Pit Bar-B-Que
and the Spirit Channel.  (Trial Tr. at 17-25.)  Those ventures
were undertaken for profit and, in the case of the Hard Rock Café
and the House of Blues, generated significant profits. (Trial Tr.
at 17-25; 68-69.)  Plaintiff demonstrated throughout his
testimony that his success as a developer and promoter of such

16

businesses involved developing a brand identity for that
particular venue and then continuously building that brand
nationally and/or internationally. (Trial Tr. at 67-69.)
According to his testimony, the Atlanta venture offered an
opportunity to expose the House of Blues brand to an
international audience.  (Trial Tr. at 29.)  Accordingly, the
Court finds that Plaintiff has proven by a preponderance of the
evidence that he was engaged in the trade or business of
developing and promoting restaurants and entertainment venues.

However, the Court finds that Plaintiff has failed to meet
his burden to prove that his payment to indemnify HOB for losses
from the Atlanta venture was a loss that qualifies for a
deduction under § 165(c)(1).  There is no question that Plaintiff
incurred a loss in the sense that he paid out to HOB $5 million
in conjunction with the contribution agreement.  The government
contends, however, that any such loss was voluntary and therefore
should not be eligible for a deduction.

Generally, the voluntary payment of another's losses without
any legal obligation to do so does not qualify as a loss pursuant
to § 165.  A. Giurlani & Bros. v. Comm'r of Internal Revenue, 119
F.2d 852, 857 (9th Cir. 1941).  Here, although Plaintiff's
payment to HOB was made pursuant to his agreement to do so, and
in that sense was not voluntary, his agreement to provide
indemnification to HOB was a voluntary agreement.  That agreement

was originally memorialized in the minutes of the May 29, 1996,
HOB Board of Directors meeting. (See Trial Ex. 16.)  Those
minutes do not reflect that any consideration was requested or
received by Plaintiff or the other directors who provided
indemnification for the venture.  Accordingly, the Court finds
that Plaintiff's agreement to indemnify HOB for losses stemming
from the Atlanta venture was voluntary and without consideration
and therefore does not qualify for a deduction under § 165.

Moreover, the parties stipulated and Plaintiff admitted
during his testimony that he would not personally profit from
either the indemnification agreement or the Atlanta venture.
(November 22, 2004, Joint Pre-trial Order at 7; Trial Tr. at 67.)
Rather, the best result that Plaintiff could have expected was
not to have to make a payment under the indemnification
agreement.  Where the best result a taxpayer can expect from a
transaction is not to have to make a payment under an agreement,
however, a taxpayer's motive is not to profit from the agreement
and a deduction under § 165 is not appropriate.  See Clark v.
Kavanagh, 59 F.Supp. 806, 808 (E.D. Mich 1944), aff'd 152 F.2d 49
(6th Cir. 1945)(finding deduction of loss inappropriate where
taxpayer agreed to indemnify co-trustees in order to induce them
to retain an investment in the trust portfolio because, *inter*

*alia*, transaction was not for profit)[5]; c.f. Hogan v. Comm'r of Internal Revenue, 3 T.C. 691, 694-95 (U.S. Tax Court 1944)(finding deduction of loss incurred by stockbroker who personally guaranteed customers against any losses arising from their purchase of stock appropriate because he stood to profit from the stock transaction, which would not have been made without his personal guarantees, and where the guarantees were not gratuitous but a condition precedent to the agreement to purchase stock). The record reflects that Plaintiff was not required to enter into the indemnification agreement, that he did not receive any consideration for doing so, and that he could not have profited in any way from his agreement to do so. (See Trial Ex. 16.) For those reasons, the Court finds that Plaintiff is not entitled to a deduction under § 165.

Accordingly, having reviewed the record and considering the relevant law, the Court finds that Plaintiff has failed to meet his burden to prove by a preponderance of the evidence that he is entitled to a deduction under § 165.[6]

---

[5] Although Clark deals with the propriety of a deduction under 28 U.S.C. § 165(c)(2), which allows for the deduction of losses incurred in any transaction entered into for profit, though not connected with a trade or business, Clark, 59 F.Supp. at 808, the Court finds the Clark court's reasoning persuasive and adopts it in the context of analyzing the propriety of a deduction under § 165(c)(1).

[6] Plaintiff alternatively contends that Defendant is either estopped from denying Plaintiff a refund under §§ 166, 162 or 165
(continued...)

19

**D. Legal and Interest Expenses Pursuant to 26 U.S.C. §§ 162 and 212**

Plaintiff also contends that he is entitled pursuant to 26 U.S.C. §§ 162 and 212 to deduct $22,601 for legal fees paid in connection with the negotiation of the termination of his employment from HOB and for negotiation and documentation of the loan transaction with Parkway Hotel Corp., and $1,709 in interest paid by First Union on cash balances in the escrow account established to hold the HOB shares and option agreements deposited with First Union as security for the loan to Parkway Hotel Corp. Defendant does not oppose or challenge either of those assertions. Accordingly, the Court finds that Plaintiff is entitled to a deduction of $22,601 for legal fees and $1,709 for interest under 26 U.S.C. §§ 162 and 212.

---

(...continued)

or that Defendant made a binding admission that the losses incurred by Plaintiff in 1997 are deductible because it allowed a portion of the claimed deduction for the taxable year 1998 and because the Internal Revenue Service issued a refund to Plaintiff for the amount of the refund claimed for 1998. Plaintiff, however, cites no legal authority for this contention, which he first raised in his sur-reply to Defendant's reply brief in support of Defendant's motion for summary judgment. (See Pl.'s Sur-Reply Brief Sub. in Resp. to Def.'s Reply Brief in Supp. of its Mot. for Summ. J. at 8.). Moreover, when the I.R.S. accepts a particular tax treatment of an item for one or more tax years, it is not estopped from challenging such treatment in other years. See Dinkins v. Comm'r of Internal Revenue, 378 F.2d 825, 829 (8th Cir. 1967)(finding I.R.S. not precluded from determining that taxpayer was not entitled to deduction in succeeding taxable years when it had previously approved a similar deduction in an earlier taxable year.). The Court therefore finds Plaintiff's contention unpersuasive.

**E. Attorney's Fees Pursuant to 26 U.S.C. § 7430**

Plaintiff also contends that he is entitled to an award of attorney's fees pursuant to 26 U.S.C. § 7430.  Section 7430 provides that "[i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for ... reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430(a).  Those reasonable costs may include attorney's fees.  26 U.S.C. § 7430(c)(1)(B)(iii).  However, because the Court has determined that Plaintiff is not entitled to a deduction under §§ 166, 162 or 165, the Court finds that Plaintiff is not a "prevailing party" and therefore is not entitled to an award of attorney's fees pursuant to 26 U.S.C. § 7430.

**III. CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff is not entitled to his claimed deduction under either 26 U.S.C. §§ 166, 162 of 165 and therefore enters judgment in favor of Defendant on those claims.  The Court further finds that Plaintiff is entitled to a deduction of $22,601 for legal fees and $1,709 for interest under 26 U.S.C. §§ 162 and 212 and enters judgment in favor of Plaintiff on those claims.  Finally, the Court finds that Plaintiff is not entitled to an award of

attorney's fees pursuant to 26 U.S.C. § 7430 and enters judgment in favor of Defendant on that claim.

So ORDERED this 3 day of August, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

22

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 51 in
case 2:03-CV-02659 was distributed by fax, mail, or direct printing on
August 4, 2005 to the parties listed.

---

Cannon F. Allen
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Ivan C. Dale
US DEPARTMENT OF JUSTICE
P.O. Box 227
Ben Franklin Station
Washington, DC 20044

R. Scott Clarke
US DEPARTMENT OF JUSTICE
P.O. Box 227
Ben Franklin Station
Washington, DC 20044

Lloyd De Vos
HILL BETTS & NASH, LLP
200 Liberty St.
20th Floor
New York, NY 10281

Honorable Jon McCalla
US DISTRICT COURT